UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
          :
PAULA NEGRO,          :
          :
         Plaintiff,          :
          :      20-CV-10407 (JMF)
   -v-          :
          :      OPINION AND ORDER
AMTRUST NORTH AMERICA, INC.,          :
          :
         Defendant.          :
          :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Paula Negro sues her former employer, Defendant AmTrust North America, Inc. ("AmTrust"), for sex discrimination and retaliation in violation of federal, state, and local law. *See* ECF No. 2 ("Compl."), ¶¶ 64-78. AmTrust now moves, pursuant to Rule 39(a)(2) of the Federal Rules of Civil Procedure, to strike Negro's jury trial demand on the ground that Negro voluntarily waived her right to a jury trial. *See* ECF No.18. *See* ECF No. 53 ("Def.'s Mem."). For the reasons that follow, the Court agrees and AmTrust's motion is GRANTED.

## BACKGROUND

      The relevant facts, drawn from the admissible materials submitted in connection with AmTrust's motion, are undisputed. In or about May 2019, Negro applied for a senior position at AmTrust. Def.'s Mem. 2. At the time, Negro worked in a senior position at another company and had held marketing leadership positions at various companies for over fifteen years. *See* ECF No. 53-1, at 16-17 ("Resume").[1] AmTrust invited Negro for an interview and

---

[1]     References to page numbers in ECF Nos. 53-1 and 53-4 are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

electronically sent her a link to complete three forms: a consent form to proceed electronically, an employment application, and a document titled "Agreement to Bring Claims in Shortened Time Period and Waive Right to Jury Trial" ("Waiver Form").  Def.'s Mem. 2-3.

The Waiver Form is two paragraphs long and reads as follows — with the text most relevant here italicized:

> *I agree that in exchange for consideration for at-will employment at AmTrust North America, Inc. ("the Company"),* I shall file any lawsuit (and all claims that could be included in that lawsuit) against the Company or any of its managers, agents, or other employees, relating to my application for employment, employment, or separation of employment, within six (6) months after the date of the action or event that is the subject of my lawsuit or the date I sign this Agreement, whichever is longer.  *I further agree that any such lawsuit shall be exclusively heard by a judge (without a jury), and that I knowingly and voluntarily waive my constitutional right to a jury trial.*  I understand that these provisions do not prevent me from filing a charge with or participating in any investigation conducted by any federal, state, or local government agency.
>
> *I UNDERSTAND THAT I AM AGREEING TO WAIVE MY CONSTITUTIONAL RIGHT TO A JURY TRIAL* AND TO FILE ANY LAWSUIT REGARDING ANY EMPLOYMENT DISPUTE AGAINST THE COMPANY OR ITS MANAGERS, AGENTS, AND EMPLOYEES NO LATER THAN SIX MONTHS AFTER THE ACTION OR EVENT THAT IS THE SUBJECT OF THE DISPUTE OR THE DATE I SIGN THIS AGREEMENT, WHICHEVER IS LONGER.  IF ANY PORTION OF THIS SHORTENED PERIOD TO BRING CLAIMS AND JURY TRIAL WAIVER IS FOUND BY A COURT TO BE UNENFORCEABLE, THE REMAINING PORTIONS OF THIS SHORTENED PERIOD TO BRING CLAIMS AND JURY TRIAL WAIVER WILL REMAIN VALID AND BE ENFORCED.  *I UNDERSTAND THAT IF I DO NOT AGREE TO THIS PROVISION I SHOULD NOT APPLY FOR EMPLOYMENT WITH THE COMPANY AS THIS IS A REQUIRED TERM OF EMPLOYMENT FOR ALL EMPLOYEES.*

ECF No. 53-1, at 8 ("Waiver Form") (emphases added).  Negro does not believe she took the time to read the Waiver Form, although there is no dispute that she had sufficient time to do so and that AmTrust did not set a deadline for her to do so.  ECF No. 53-2 ("Pl. Tr."), at 138-39; *see also id.* at 140 (stating that she is sure she "just signed [the Waiver Form] without reading it").  Negro electronically signed the documents on May 9, 2019.  Def.'s Mem. 3-4.

The next day, AmTrust sent Negro a three-page letter offering her a job (the "Offer Letter"). Def.'s Mem. 4; ECF No. 53-4, at 3-5 ("Offer Letter"). To the extent relevant here, the Offer Letter provided that it "replace[d] any prior understandings, offers or agreements, whether oral, written or implied" between Negro and AmTrust "regarding the terms of [Negro's] employment." Offer Letter 4. It further provided that the offer of employment was contingent on Negro's execution of "the *Waive Right to Jury Trial Agreement* before you start employment with the company." *Id.* (emphasis added). According to Amy Hall, AmTrust's Senior Vice President of Human Resources for North America, the "Waive Right to Jury Trial Agreement" in the Offer Letter was intended to be a reference to the Waiver Form. ECF No. 53-3 ("Hall Tr."), at 20; ECF No. 53-4, at 1-2 ("Hall Supp. Decl."), ¶ 4. According to Hall, AmTrust did not have a form titled "Waive Right to Jury Trial Agreement" at the time of Negro's hiring; indeed, the only agreement AmTrust had in which an employee waives her right to a jury trial was the "Agreement to Bring Claims in Shortened Time Period and Waive Right to Jury Trial." Hall Supp. Decl. ¶¶ 5-6. Further, according to Hall, while Negro signed the Waiver Form before her interview, other AmTrust employees have signed it after receiving a job. Hall Tr. 27.

Negro electronically signed the Offer Letter on May 13, 2019. Def.'s Mem. 5. AmTrust terminated her employment on September 24, 2019, *id.*, and she filed the present action on December 10, 2020, *see* ECF No. 1.

## LEGAL STANDARDS

The parties dispute whether the Court should apply the standards for summary judgment to AmTrust's motion. *Compare* ECF No. 54 ("Pl.'s Opp'n"), at 1-2 (arguing they should), *with* ECF No. 55 ("Def.'s Reply"), at 1-2 (arguing they should not). But ultimately, whether the summary judgment standard applies has no bearing on the Court's analysis (either way, both parties agree that the Court may consider extrinsic evidence) or conclusion. Accordingly, the

3

Court assumes without deciding that the summary judgment standards do apply. Under those standards, summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine dispute regarding any material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## DISCUSSION

Whether Negro waived her right to a jury trial turns on two analytically distinct questions: (1) whether the Waiver Form is a valid contract at all; and (2) if it is, whether the waiver of her constitutional right to a jury trial is valid. The Court will address each in turn.

**A. Whether the Waiver Form Is a Valid Contract**

With respect to the first issue — whether the Waiver Form is a valid contract — the parties disagree about whether the Waiver Form constitutes a valid contract on its own terms and, either way, about the effect or effects of the Offer Letter on the Waiver Form. AmTrust, for its part, argues that the Waiver Form was a valid contract, Def.'s Mem. 8-10; that the Offer

4

Letter did not novate the Waiver Form, *id.* at 11-13, 17-21; and that the Offer Letter incorporates by reference the Waiver Form, *id.* at 13-17.  Negro disputes all of these points; she argues that the Waiver Form is unenforceable for lack of consideration, Pl.'s Opp'n 3-5; and asserts that, even if it is enforceable, it was novated by the Offer Letter, *id.* at 6-10.  Significantly, neither party disputes that the Offer Letter itself is a valid contract.  *See* Pl.'s Opp'n 5 n.3.

The Court begins with the question of whether the Waiver Form was incorporated by reference into the Offer Letter.  Under New York law, which applies here, "[t]he doctrine of incorporation by reference requires that the paper to be incorporated into a written instrument by reference, must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *Chiacchia v. National Westminster Bank U.S.A.*, 507 N.Y.S.2d 888, 889 (2d Dep't 1986).  "Courts consider two factors in making this determination: (1) whether the allegedly incorporated document is expressly identified . . . beyond all reasonable doubt[;] . . . and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018).

Here, the question of incorporation turns on whether the Waiver Form is the "Waive Right to Jury Trial Agreement" referenced in the Offer Letter because the Offer Letter "clearly communicate[d]" that the offer of employment to Negro was contingent on her execution of the "Waive Right to Jury Trial Agreement." *Id.*  Based on the evidence in the record, the Court concludes beyond all reasonable doubt that the Waiver Form and the "Waive Right to Jury Trial Agreement" are indeed one and the same and that no reasonable factfinder could conclude otherwise.  The evidence shows that the Waiver Form was, at the relevant time, AmTrust's *only* jury trial waiver document and that AmTrust did not have a document called "Waive Right to Jury Trial Agreement."  Hall Supp. Decl. ¶¶ 5-6.  Notably, Negro does not claim that she

received any document titled "Waive Right to Jury Trial Agreement" from AmTrust. Nor does she identify any document other than the Waiver Form to which "Waive Right to Jury Trial Agreement" might refer. Put simply, based on the evidence in the record, there is only one document to which the reference "Waive Right to Jury Trial Agreement" in the Offer Letter could possibly refer: the Waiver Form.[2] It follows that the Waiver Form was incorporated by reference into the Offer Letter and, thus, is part of a valid contract.

It is true that the Offer Letter does not refer to the Waiver Form by its correct title. But the law does not require an exact match. Indeed, "[n]o particular mode of reference is necessary" for incorporation. *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 341 (S.D.N.Y. 2019) (finding that a reference to "the schedule on file" identified beyond a reasonable doubt a schedule that had been attached to an email between the parties, because there were no other documents to which "schedule on file" could refer). At bottom, it is plain that the mismatch was due only to a scrivener's error and, as other courts have found in similar circumstances, the mismatch does not, in the face of the other evidence in the record, raise a reasonable doubt about incorporation. *See, e.g.*, *Rejuso v. Brookdale Senior Living, Inc.*, No. CV 17-4647 (DSF), 2017 LEXIS 153456, at *11 (C.D. Cal. Sep. 18, 2017) (holding that an Employee Handbook "expressly refers to" an agreement to arbitrate, despite referring to it by a different name); *Laureate Educ., Inc. v. Ins. Co. of the State of Pennsylvania*, No. 11 CIV. 7175 CRK, 2014 WL 1345888, at *7 (S.D.N.Y. Mar. 31, 2014) (finding that because "[t]here are not

---

[2]  At best, the mismatch creates an ambiguity and "[t]he court may resolve ambiguity in contractual language as a matter of law . . . if," as here, "the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (cleaned up).

multiple statements of values to which the parties may be referring," a reference to a statement of values incorporated a document beyond a reasonable doubt).

Negro's only other argument rests on language in the Offer Letter suggesting a jury trial waiver she had not yet signed at the time of the offer. *See* Pl.'s Opp'n 7 (quoting the Offer Letter, which states "[t]he Company's offer to hire you is contingent on: . . . your execution of the Confidentiality and Proprietary Rights Agreement and the Waive Right to Jury Trial Agreement before you start employment with the company"). But the fact that the Offer Letter allowed for the Waiver Form to be signed later does not create ambiguity as to which document "Waive Right to Jury Trial Agreement" refers. Just as common sense dictates that "Waive Right to Jury Trial Agreement" must refer to the Waiver Form, it also dictates that form offer letters from major corporations may not reflect when a particular offeree signed a particular document. Moreover, the evidence established that while Negro signed the Waiver Form before her interview, some applicants sign it after AmTrust makes them a job offer. Hall Tr. 27. The language in the Offer Letter accommodates both situations.

In short, the Offer Letter incorporated the Waiver Form by reference. It follows that Negro's arguments about lack of consideration and novation are without merit. The Waiver Form was part of the Offer Letter, which is indisputably a valid contract.

**B. Validity of the Jury Trial Waiver**

That is not the end of the matter, however, because, even if the Waiver Form is a valid contract, it does not follow that Negro's waiver of her constitutional right to a jury trial is enforceable. The burden of proving the validity of a jury waiver rests with the party seeking to enforce it — here, AmTrust. *See Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC*, 801 F. Supp. 2d 224, 229 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). A party seeking to enforce a jury waiver must show that it was entered into knowingly,

intentionally, and voluntarily. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (citation omitted). In determining whether a waiver meets these criteria, courts in this Circuit consider the following factors: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011). No single factor is dispositive. *See, e.g., id.*

Here, the balance of the factors favors enforcement of Negro's waiver. First, although the Waiver Form states in plain language that it may not be negotiated ("I UNDERSTAND THAT IF I DO NOT AGREE TO THIS PROVISION I SHOULD NOT APPLY FOR EMPLOYMENT WITH THE COMPANY AS THIS IS A REQUIRED TERM OF EMPLOYMENT FOR ALL EMPLOYEES") and Negro was required to sign it before her first interview, the record does not show that Negro had "*no* ability to actually alter the terms of the agreement." Pl.'s Opp'n 4 (emphasis added). Negro does not, for instance, claim that she attempted to negotiate the Waiver Form and was rebuffed; instead, she "just signed it without reading it." Pl. Tr. 140. She also had ample time to review the Waiver Form by herself or with an attorney, Def.'s Mem. 3 —both when she signed it and when it was incorporated into the Offer Letter (at which point she was no longer a "mere applicant," Pl.'s Opp'n 4) — and she does not suggest that AmTrust dissuaded her from doing so. *See, e.g., Wechsler v. Hunt Health Sys., Ltd.,* No. 94 CIV. 8294 (PKL), 2003 WL 21878815, at *3 (S.D.N.Y. Aug. 7, 2003) (considering the opportunity for review of the contract, retention of an attorney who revised the contract, and the fact that the party who signed the contract was in a position to walk away from it as evidence of negotiability); *cf. Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 257 (2d Cir. 1977) (finding a lack of negotiability because the party seeking to enforce it "dissuaded" the

other party from consulting an attorney at the time that he signed it). Thus, the first factor weighs in AmTrust's favor — or, at a minimum, does not weigh heavily in favor of Negro.

Second, Negro does not dispute that the waiver provision was conspicuous. That is for good reason. The Waiver Form is only two paragraphs long, and it refers in plain language at least two times to waiver of the right to a jury trial. The second time appears at the start of the second paragraph, which is capitalized for emphasis. Moreover, the Waiver Form was prominently titled "Agreement to Bring Claims in Shortened Time Period and Waive Right to Jury Trial," and, as discussed, the Offer Letter, incorporating the Waiver Form, referred expressly to the requirement that Negro "Waive [her] Right to [a] Jury Trial." *See* Offer Letter 4. In short, the second factor weighs heavily in favor of enforcing the waiver. *See, e.g.*, *Oei v. Citibank, N.A.*, 957 F. Supp. 492, 523 (S.D.N.Y. 1997) (finding that a waiver provision set off in its own paragraph was "highly conspicuous"); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 667 (S.D.N.Y. 1991) (finding a waiver conspicuous because it was "set off in its own paragraph less than two inches above the signature line").

With respect to the third factor, the relative bargaining power of the parties, Negro was already employed in a senior position at another company when she applied to AmTrust, and when AmTrust presented her with the Waiver Form, it had already selected her for an interview. *See, e.g.*, *Oei*, 957 F. Supp. 492, 523 (S.D.N.Y. 1997) (finding that a company's interest in "accommodating" an individual strengthened the individual's bargaining power). Nor was she in a "dire financial condition" that would give AmTrust "undue leverage." *Lehman Bros. Holdings Inc.*, 801 F. Supp. 2d at 232. Negro argues that there is an inherent power imbalance between any person and a major corporation, Pl.'s Opp'n 4, but that consideration is not dispositive; were it otherwise, no jury trial waiver in the employment context would be enforceable. *See, e.g.*, *Lehman Bros. Holdings Inc.*, 801 F. Supp. at 232 ("[T]he mere fact that Lehman was a major

9

financial institution [does not] necessitate the conclusion that the . . . defendants lacked adequate bargaining power."); *Morgan Guar. Tr. Co. of New York v. Crane*, 36 F. Supp. 2d 602, 604 (S.D.N.Y. 1999) (noting that despite the difference in bargaining power between a bank and two individuals, the individuals were "not financial neophytes"); *Oei*, 957 F. Supp. 492, 523 (S.D.N.Y. 1997) (finding "little disparity in bargaining power" between a national bank and a customer).

Finally, the last factor, the business acumen of the party opposing the waiver, plainly weighs in AmTrust's favor. Negro holds a bachelor's degree in business, completed multiple business-related post-graduate certificates, and, at the time she signed the Waiver Form, had over fifteen years of leadership experience in the marketing field. *See, e.g.*, *Wechsler*, 2003 WL 21878815, at *4 (collecting cases and noting that "[e]xtensive past business experience on behalf of the party contesting a jury waiver is an indication that this party knowingly and intentionally consented to the waiver").

Ultimately, two of the four relevant factors (the second and fourth) weigh heavily in favor of enforcing the jury trial waiver. The other two weigh somewhat in favor of enforcement, but they certainly do not weigh heavily in the balance or outweigh the factors that call for enforcement. Accordingly, the Court finds that Negro knowingly, intentionally, and voluntarily waived her right to a jury trial. In arguing otherwise, Negro suggests that the Court's finding should turn on the negotiability factor alone, asserting that the other three factors are "worthless if she has no ability to actually alter the terms of the agreement." Pl.'s Opp'n 4. But putting aside the fact that the negotiability factor does not even favor her, the negotiability factor is not dispositive; instead, courts have treated the factors as a balancing test. *See, e.g.*, *Price*, 808 F. Supp. 2d at 705. Balancing all four factors here, the Court concludes that Negro's waiver is enforceable.

## CONCLUSION

For the foregoing reasons, AmTrust's motion is GRANTED, and Negro's jury trial demand is stricken. Unless and until the Court orders otherwise, any motions for summary judgment are due within thirty days of the date of this Opinion and Order. *See* ECF No. 48. That said, in cases to be tried without a jury, the Court generally dispenses with summary judgment practice and proceeds directly to trial, with direct testimony taken by affidavit. In light of that, and to discuss what, if anything, the Court can do to facilitate settlement, the parties shall appear for a teleconference with the Court on **July 20, 2022**, at **2:15 p.m.** by calling the Court's dedicated conference call line at (888) 363-4749, using access code 542-1540 followed by the pound (#) key. Members of the public and press may attend using the same dial-in information; they will be placed in listen-only mode. The parties are reminded to follow the procedures for teleconferences described in the Court's Individual Rules and Practices, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman. Among other things, those procedures require counsel to provide advance notice of who will participate in the conference and the telephone numbers they will use to participate.

The Clerk of Court is directed to terminate ECF No. 52.

SO ORDERED.

Dated: July 7, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge